ANNE M. ROGASKI (CA Bar No. 184754)
**HIPLegal LLP**
20195 Stevens Creek Blvd., Suite 250
Cupertino, CA 95014
annie@hiplegal.com
Phone: 650-397-6447
Fax: 408-689-1645

Attorneys for Plaintiff
Huddleston Deluxe, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HUDDLESTON DELUXE, INC., a Nevada Corporation,<br><br>      Plaintiff,<br><br>      vs.<br><br>ERIC SMITH, as an individual, dba SMITH BAITS LLC, and dba BAITSMITH LLC,<br><br>      Defendant. | Case Number: 5:16-cv-1546<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, BREACH OF IMPLIED-IN-FACT CONTRACT, PROMISSORY ESTOPPEL, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, HUDDLESTON DELUXE, INC. ("HUDDLESTON" or "Plaintiff") for its Complaint against Defendant ERIC SMITH, as an individual, dba SMITH BAITS LLC, and dba BAITSMITH LLC ("SMITH BAITS" or "Defendant") alleges and states as follows:

### NATURE OF ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq.  Plaintiff seeks damages, attorneys' fees, costs, prejudgment and post-judgment interest, and injunctive relief.

**1**

**COMPLAINT FOR PATENT INFRINGEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE PARTIES**

2.      Plaintiff HUDDLESTON is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 6965 Speedway Blvd., X101, Las Vegas, Nevada 89115.

3.      Upon information and belief, Defendant ERIC SMITH, is an individual residing in the State of Washington and is doing business as SMITH BAITS LLC and as BAITSMITH LLC in the State of Washington, with principal places of business in the State of Washington.

**JURISDICTION**

4.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Upon information and belief, this Court has personal jurisdiction over Defendant since, *inter alia*, Defendant transacts business in, and maintains continuous and systematic contacts within, this District and the State of California. By way of example only, Defendant has sold products, including the accused Smith Baits "Swim and Jig Blue Ghost" and the Smith Baits "Swim and Jig Kokanee" within this District, with the products shipped from Tackle Warehouse, located in San Luis Obispo, California, and received in Cupertino, California.  Defendant further has committed acts of patent infringement complained of herein and/or contributed to or induced those acts of patent infringement by others in this District, and elsewhere in California and the United States.

**VENUE**

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), because a substantial part of the events giving rise to Plaintiff's claim for patent infringement occurred in this District and because Defendant is subject to personal jurisdiction in this District.

**INTRADISTRICT ASSIGNMENT**

7.      Pursuant to Civil Local Rules 3-5(b) and 3-2(c), because this action is an intellectual property action, it is properly assigned to any of the divisions in this District.

**2**

**COMPLAINT FOR PATENT INFRINGEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FACTUAL BACKGROUND**

8.     Plaintiff HUDDLESTON is a company based in Las Vegas, Nevada, that designs, manufactures, markets and sells swimbait lures in the United States and in various foreign countries under its brand name "Huddleston Deluxe."  HUDDLESTON is recognized as a leader in designing realistic "swimbait" lures, which mirror the natural movement of bait fish, making them more alluring to larger target fish, a particularly desirable feature for tournament and trophy fishing.  As a result, they are legendary in the world of trophy bass fishing. Huddleston Deluxe products are available for sale at through its website www.huddbaits.com.

9.     On December 8, 2009, United States Patent No. 7,627,979 ("the '979 Patent") entitled "Fish Lure with Vortex Tail," was duly and legally issued by the United States Patent and Trademark Office.  HUDDLESTON DELUXE, INC., is and at all relevant times has been the assignee of the '979 Patent. A true and correct copy of the '979 Patent is attached hereto as Exhibit 1.

10.     Plaintiff sells swimbait lures covered by its '979 Patent, including but not limited to its 10", 8" and 6" "Trout," "68 Special," "Huddgill (bluegill)," "Weedless Shad," and "Weedless Trout" swimbaits.

11.     Upon information and belief, Defendant has in the past six years manufactured, marketed, offered for sale, and sold certain models of swimbaits, and Defendant continues to manufacture, market, offer for sale, and sell those and/or other models of swimbaits, including the BAITSMITH-branded "Madgill," "Magnum Trout" and "Shad" swimbaits and SMITH BAITS-branded "Swim and Jig" (in "Blue Ghost," "Green Hitch," "Kokanee," and "Spring Hitch" colors) swimbaits (collectively, "Accused Products"). Upon further information and belief, ERIC SMITH has in the past and/or currently conducts business as both SMITH BAITS LLC and BAITSMITH LLC.  BAITSMITH LLC was an Idaho limited liability company, which was dissolved in February 2011.  Despite the dissolution of that entity, swimbait lures continue to be sold under the BAITSMITH name, on information and belief, by Eric Smith, though not in a public marketplace.  (*See* Exhibits 2-4 containing redacted discussions within the industry

**3**

**COMPLAINT FOR PATENT INFRINGEMENT**

about Baitsmith and Smith Baits selling the same products, which are now being sold "underground.")

12.     In 2010, Plaintiff became aware that Defendant was manufacturing, offering for sale, and selling several models of swimbaits that infringed the '979 patent, including a 5" swimbait, a 6" swimbait and a 9.5" swimbait in the United States, at that time being sold under the brand name "BAITSMITH."  A principal of Plaintiff reached out to a principal of BAITSMITH to discuss the infringement and request that it cease.  BAITSMITH did not respond.  Plaintiff next sent a cease and desist letter through its attorney to Defendant BAITSMITH, on March 17, 2010, advising that the accused products infringed the '979 Patent. Discussions between counsel for Plaintiff and counsel for Defendant BAITSMITH followed, with counsel for Defendant BAITSMITH ultimately claiming (without identifying) that prior art existed, yet representing on April 15, 2010:

> Nonetheless, Baitsmith intends to modify its design to ensure that its future products are not within the scope of the claims of the '979 patent. These changes include, among other things, using something other than a polymer foamed weighted portion which appears to be required in all of the claims of the '979 patent.

(*See* Exhibit 5.)  Based on this representation, Plaintiff believed the matter was resolved and did not file a patent infringement action.

13.     BAITSMITH dissolved in February 2011.

14.     In 2015, however, Plaintiff became aware that the Accused Products were being sold again, some under the original name "BAITSMITH" and others under the name "SMITH BAITS."  Plaintiff ordered samples of each and, in February 2015, received BAITSMITH Magnum Trout products and SMITH BAITS Green Hitch products.

15.     Upon information and belief, Defendant continues to commit the above-alleged acts of infringement of one or more claims of the '979 Patent.

///

///

**4**

**COMPLAINT FOR PATENT INFRINGEMENT**

1

2

**FIRST CLAIM FOR RELIEF**

**INFRINGEMENT OF U.S. PATENT NO. 7,627,979**

3         16.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth

4    in paragraphs 1 through 15 above.

5         17.      Defendant has directly and/or indirectly infringed, and continues to infringe,

6    (literally and under the doctrine of equivalents) one or more claims of the '979 Patent by making,

7    using, selling, offering for sale, and/or importing, BAITSMITH-branded "Original Hitch,"

8    "Madgill," "Magnum Trout" and/or "Shad" swimbaits and SMITH BAITS-branded "Swim and

9    Jig" (in "Blue Ghost," "Green Hitch," "Kokanee," and "Spring Hitch" colors) swimbaits

10   ("Accused Products"), and/or inducing others in the U.S. to do the same.

11        18.     Defendant has induced at least Tackle Warehouse to offer for sale and sell

12   "SMITH BAITS" products (see

13   http://www.tacklewarehouse.com/Smith_Baits_Swim_and_Jig/descpage-SBSAJ.html).

14   Defendant has been fully aware of the '979 patent since at least 2010 when Plaintiff first

15   contacted Defendant BAITSMITH to request that it cease and desist its infringement.  On

16   information and belief, Defendant was aware that the products it has sold and is selling under the

17   name "SMITH BAITS" are the same for all purposes relevant to the '979 patent as the products

18   it has sold under the name "BAITSMITH."  Despite this knowledge, and its prior representation

19   that it would change its design to a non-infringing design and its implication that it would not

20   continue to sell the originally infringing products, Defendant induced at least Tackle Warehouse

21   to offer for sale and sell at least the SMITH BAITS products. On information and belief,

22   Defendant acted with knowledge of infringement and with intent that Tackle Warehouse would

23   directly infringe the '979 patent through its offer for sale and sale of the SMITH BAITS

24   products.

25   ///

26   ///

27

28

**5**

**COMPLAINT FOR PATENT INFRINGEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19.     On information and belief, the Accused Products infringe either literally or by the doctrine of equivalents at least claims 1-6, 8-12, and 15.  By way of example, the Kokanee "Swim and Jig" product, infringes at least claim 15 as it literally or equivalently has a head, rear, reduced tail portion, tapered body, weighted insert with a polymer foam portion and a metal portion having different densities, enlarged tail with tapered top and bottom, distal surface, contours from the reduced tail portion to the distal surface, a lateral indentation, and all other limitations of the claim, as shown at least in part in the annotated pictures below.  The side-to-side movement of the tail can be seen in the video posted at

https://www.youtube.com/watch?v=8wHnD5x_FOc, which shows the BAITSMITH 6" Shad swimbait "swimming."  Additional detail for this product and all Accused Products and asserted claims will be provided in Plaintiff's Infringement Contentions.  Plaintiff reserves all rights to make additional and/or different arguments at that time as additional facts are discovered.



20.     Defendant's infringement of the '979 Patent has caused, and continues to cause, damage to Plaintiff in an amount to be determined at trial.

21.     Defendant's infringement of the '979 Patent has caused, and continues to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

**6**

**COMPLAINT FOR PATENT INFRINGEMENT**

22.     Upon information and belief, Defendant's aforementioned infringing acts were, and are, willful and deliberate since such acts were committed by Defendant despite knowledge of the '979 Patent.  Not only was Defendant aware of the '979 patent through Plaintiff's cease and desist letter, but Defendant took affirmative steps to dissolve the BAITSMITH entity, continue to sell the infringing "BAITSMITH" swimbaits only through personal contacts, and began selling its swimbaits publicly under the "SMITH BAITS" name, in an apparent attempt to appear to be a different company than the one that represented it would change to a non-infringing design.

**SECOND CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

23.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

24.     On April 15, 2010, Defendant BAITSMITH, through its counsel, agreed that Defendant BAITSMITH would redesign its products to ensure that future products did not infringe the '979 patent.  Implicit within this promise was that Defendant BAITSMITH would cease selling the infringing products and would not sell other infringing designs. Defendant BAITSMITH noted that this promise "should be ample compensation for your client. As such, BaitSmith views this matter as closed."  (Exhibit 5.)

25.     As consideration for this promise, Plaintiff did not sue Defendant BAITSMITH in 2010 for its infringement. Plaintiff performed its obligations under this contract by not suing Defendant BAITSMITH in 2010 in reliance upon Defendant BAITSMITH's representations.

26.     Defendant BAITSMITH, though principal ERIC SMITH, breached this contract by not changing its design to a non-infringing design as promised, and by continuing to sell infringing products under the name BAITSMITH as well as under the new name SMITH BAITS.

27.     Plaintiff was damaged by Defendant's breach because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its infringing sales

**7**

**COMPLAINT FOR PATENT INFRINGEMENT**

impossible.  Plaintiff was further damaged when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police. Defendant's continued infringement, after agreeing to stop infringing, sent an unacceptable message to the swimbait industry that infringing Plaintiff's patents had no consequences and has damaged Plaintiff's reputation as an innovator and patent owner. Indeed, at least one other swimbait lure manufacturer has begun infringing the '979 patent.

**THIRD CLAIM FOR RELIEF**

**BREACH OF IMPLIED IN FACT CONTRACT**

28.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

29.     By their actions, Plaintiff and Defendant entered into a contract whereby Defendant would cease its infringement and Plaintiff would refrain from suing Defendant for the infringement of which Plaintiff was aware in 2010.

30.     Defendant BAITSMITH dissolved as a company, which gave Plaintiff the impression that the infringing BAITSMITH products would no longer be sold.

31.     Plaintiff, for its part, did not sue Defendant BAITSMITH in 2010 in reliance upon Defendant BAITSMITH's representations.

32.     Defendant BAITSMITH, though principal ERIC SMITH, breached this contract by resuming sale of the infringing BAITSMITH products and by selling new infringing products under the name SMITH BAITS.

33.     Plaintiff was damaged by Defendant's breach because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its infringing sales impossible.  Plaintiff was further damaged when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police. Defendant's continued infringement, after agreeing to stop infringing, sent an unacceptable

**8**

**COMPLAINT FOR PATENT INFRINGEMENT**

message to the swimbait industry that infringing Plaintiff's patents had no consequences and has damaged Plaintiff's reputation as an innovator and patent owner. Indeed, at least one other swimbait lure manufacturer has begun infringing the '979 patent.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

34.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

35.    On April 15, 2010, Defendant BAITSMITH, through its counsel, agreed that Defendant BAITSMITH would redesign its products to ensure that future products did not infringe the '979 patent.  Implicit within this promise was that Defendant BAITSMITH would cease selling the infringing products and would not sell other infringing designs. Defendant BAITSMITH noted that this promise "should be ample compensation for your client. As such, BaitSmith views this matter as closed."  (Exhibit 5.)

36.    As consideration for this promise, Plaintiff did not sue Defendant BAITSMITH in 2010 for its infringement. Plaintiff performed its obligations under this contract by not suing Defendant BAITSMITH in 2010 in reliance upon Defendant BAITSMITH's representations.

37.    Defendant BAITSMITH, though principal ERIC SMITH, breached the implied covenant of good faith and fair dealing by not changing its design to a non-infringing design as promised, by resuming sale of the infringing BAITSMITH products in "underground" markets, and by selling additional infringing products under the name SMITH BAITS.

38.    Plaintiff was damaged by Defendant's breach because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its infringing sales impossible.  Plaintiff was further damaged when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police. Defendant's continued infringement, after agreeing to stop infringing, sent an unacceptable message to the swimbait industry that infringing Plaintiff's patents had no consequences and has

**9**

**COMPLAINT FOR PATENT INFRINGEMENT**

damaged Plaintiff's reputation as an innovator and patent owner. Indeed, at least one other swimbait lure manufacturer has begun infringing the '979 patent.

## FIFTH CLAIM FOR RELIEF

## PROMISSORY ESTOPPEL

39.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

40.    On April 15, 2010, Defendant BAITSMITH, through its counsel, promised that Defendant BAITSMITH would redesign its products to ensure that future products did not infringe the '979 patent.  Implicit within this promise was that Defendant BAITSMITH would cease selling the infringing products and would not sell other infringing designs.

41.    In reliance on this promise, Plaintiff did not sue Defendant BAITSMITH in 2010 for its infringement.

42.    It was reasonable for Plaintiff to rely on Defendant BAITSMITH's promise, as it was made in response to an allegation of patent infringement and a request to cease and desist that infringement.  Further, it was foreseeable by Defendant BAITSMITH that Plaintiff would rely on the promise.

43.    Plaintiff was injured by its reliance on Defendant BAITSMITH's promise because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its infringing sales impossible.  Plaintiff was further injured when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police.  Plaintiff's reputation in this close-knit industry has been harmed by Defendant ERIC SMITH's callous and flippant disregard for Plaintiff's patent rights.

///

///

**10**

**COMPLAINT FOR PATENT INFRINGEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CLAIM FOR RELIEF

## FRAUD

44.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

45.     On April 15, 2010, Defendant BAITSMITH, through its counsel, represented that Defendant BAITSMITH would redesign its products to ensure that future products did not infringe the '979 patent.  Implicit within this representation was that Defendant BAITSMITH would cease selling the infringing products and would not sell other infringing designs.

46.     This representation was false when it was made.  The BAITSMITH entity was dissolved to give the appearance that it would no longer sell infringing products, but Defendant ERIC SMITH resumed sales under the BAITSMITH name in "underground" markets to get the benefit of selling the infringing product while making it difficult for Plaintiff to identify and track the infringing sales.

47.     Defendant BAITSMITH and/or ERIC SMITH knew that the representation was false when made, or made the representation recklessly and without regard for its truth, as evidenced by the resumed infringing sales under the BAITSMITH name on information and belief at least by early 2015.

48.     Defendant BAITSMITH and/or ERIC SMITH intended for Plaintiff to rely on the representation and not file a lawsuit to remedy the infringing manufacture and sales in 2010.

49.     Plaintiff did in fact rely on the representation, as it did not sue Defendant BAITSMITH in 2010 for its infringement.

50.     It was reasonable for Plaintiff to rely on Defendant BAITSMITH's promise, as it was made in response to an allegation of patent infringement and a request to cease and desist that infringement.  Further, it was foreseeable by Defendant BAITSMITH that Plaintiff would rely on the promise.

51.     Plaintiff was injured by its reliance on Defendant BAITSMITH's promise because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its

**11**

**COMPLAINT FOR PATENT INFRINGEMENT**

infringing sales impossible.  Plaintiff was further injured when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police.  Plaintiff's reputation in this close-knit industry has been harmed by Defendant ERIC SMITH's callous and flippant disregard for Plaintiff's patent rights.

52.     Plaintiff's reliance on Defendant's representation was a substantial factor in causing its harm.

## SEVENTH CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENTATION

53.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

54.     On April 15, 2010, Defendant BAITSMITH, through its counsel, represented that Defendant BAITSMITH would redesign its products to ensure that future products did not infringe the '979 patent.  Implicit within this representation was that Defendant BAITSMITH would cease selling the infringing products and would not sell other infringing designs.

55.     This representation was false when it was made.  The BAITSMITH entity was dissolved to give the appearance that it would no longer sell infringing products, but Defendant ERIC SMITH resumed sales under the BAITSMITH name, on information and belief at least by early 2015, in "underground" markets to get the benefit of selling the infringing product while making it difficult for Plaintiff to identify and track the infringing sales.

56.     Defendant BAITSMITH and/or ERIC SMITH knew that the representation was false when made, or made the representation recklessly and without regard for its truth, as evidenced by the resumed infringing sales under the BAITSMITH name.

57.     Defendant BAITSMITH and/or ERIC SMITH intended for Plaintiff to rely on the representation and not file a lawsuit to remedy the infringing manufacture and sales in 2010.

58.     Plaintiff did in fact rely on the representation, as it did not sue Defendant BAITSMITH in 2010 for its infringement.

## COMPLAINT FOR PATENT INFRINGEMENT

59.     It was reasonable for Plaintiff to rely on Defendant BAITSMITH's promise, as it was made in response to an allegation of patent infringement and a request to cease and desist that infringement.  Further, it was foreseeable by Defendant BAITSMITH that Plaintiff would rely on the promise.

60.     Plaintiff was injured by its reliance on Defendant BAITSMITH's promise because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its infringing sales impossible.  Plaintiff was further injured when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police.  Plaintiff's reputation in this close-knit industry has been harmed by Defendant ERIC SMITH's callous and flippant disregard for Plaintiff's patent rights.

61.     Plaintiff's reliance on Defendant's representation was a substantial factor in causing its harm.

## EIGHTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION

62.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

63.     On April 15, 2010, Defendant BAITSMITH, through its counsel, represented that Defendant BAITSMITH would redesign its products to ensure that future products did not infringe the '979 patent.  Implicit within this representation was that Defendant BAITSMITH would cease selling the infringing products and would not sell other infringing designs.

64.     This representation was false when it was made.  The BAITSMITH entity was dissolved to give the appearance that it would no longer sell infringing products, but Defendant ERIC SMITH resumed sales under the BAITSMITH name, on information and belief at least by early 2015, in "underground" markets to get the benefit of selling the infringing product while making it difficult for Plaintiff to identify and track the infringing sales.

13

**COMPLAINT FOR PATENT INFRINGEMENT**

65.     Defendant BAITSMITH and/or ERIC SMITH had no reasonable grounds to believe the representation to be true when it was made, as evidenced by the resumed infringing sales under the BAITSMITH name.

66.     Defendant BAITSMITH and/or ERIC SMITH intended for Plaintiff to rely on the representation and not file a lawsuit to remedy the infringing manufacture and sales in 2010.

67.     Plaintiff did in fact rely on the representation, as it did not sue Defendant BAITSMITH in 2010 for its infringement.

68.     It was reasonable for Plaintiff to rely on Defendant BAITSMITH's promise, as it was made in response to an allegation of patent infringement and a request to cease and desist that infringement.  Further, it was foreseeable by Defendant BAITSMITH that Plaintiff would rely on the promise.

69.     Plaintiff was injured by its reliance on Defendant BAITSMITH's promise because BAITSMITH dissolved as an entity in 2011, making recovery of damages from that entity for its infringing sales impossible.  Plaintiff was further injured when Defendant ERIC SMITH began doing business as BAITSMITH again, on information and belief at least by early 2015, selling the infringing swimbaits in "underground" markets that were difficult to identify, track, and police.  Plaintiff's reputation in this close-knit industry has been harmed by Defendant ERIC SMITH's callous and flippant disregard for Plaintiff's patent rights.

70.     Plaintiff's reliance on Defendant's representation was a substantial factor in causing its harm.

### NINTH CLAIM FOR RELIEF
### UNFAIR COMPETITION IN VIOLATION OF
### CALIFORNIA BUS. & PROF. CODE §§ 17200, et seq.

71.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 15 above.

72.     Defendant's actions of representing that BAITSMITH would stop selling infringing swimbait products, dissolving the entity BAITSMITH LLC, resuming sales of

**14**

**COMPLAINT FOR PATENT INFRINGEMENT**

BAITSMITH-branded infringing swimbait products in "underground" markets that would be difficult to track and stop, and resuming infringing sales publicly as SMITH BAITS in California constitute unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code sections 17200, et seq.

73.    As a result of Defendant's violations of Business and Professions Code section 17200, Defendant has unjustly enriched himself at Plaintiff's expense. The unjust enrichment continues to accrue as the unlawful, unfair, and fraudulent business acts and practices continue.

74.    To prevent his unjust enrichment, Defendant in all forms (as the individual ERIC SMITH, as the entity BAITSMITH, and as the entity SMITH BAITS) should be required to disgorge their illegal gains for the purpose of making full restitution to Plaintiff. Defendant should also be permanently enjoined from continuing the violations of Business and Professions Code section 17200.

75.    The acts and business practices alleged herein constituted and constitute a continuous and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code section 17200.

76.    Plaintiff therefore requests an order requiring disgorgement and/or imposing a constructive trust upon Defendant's ill-gotten gains, freezing Defendant's assets, and/or requiring Defendant to pay restitution to Plaintiff of all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent.

**PRAYER FOR RELIEF**

1.    WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A.    For judgment that Defendant infringes one or more claims of the '979 Patent;

**15**

**COMPLAINT FOR PATENT INFRINGEMENT**

B.      An award of damages adequate to compensate Plaintiff for patent infringement, as well as prejudgment interest from the date infringement began, but in no event less than a reasonable royalty as permitted by 35 U.S.C. §284;

C.      An award of treble damages for the period of any willful infringement pursuant to 35 U.S.C. §284;

D.      A finding that this case is exceptional and an award of interest, costs and attorneys' fees incurred by Plaintiff in prosecuting this action, as provided by 35 U.S.C. §285;

E.      A preliminary and permanent injunction prohibiting Defendant, its respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from engaging in further infringement and/or acts of infringement of the '979 Patent;

F.      Actual damages, statutory damages, punitive or treble damages, and such other relief available under the statutes cited in this Complaint;

G.      Restitution of unjust enrichment;

H.      Prejudgment and post-judgment interest;

I.      Attorneys' fees and costs; and

J.      For all other and further relief deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

Respectfully submitted,

DATED: March 29, 2016                    **HIPLegal LLP**

By: _____/s/Anne M. Rogaski_____
ANNE M. ROGASKI (CA Bar No. 184754)
Attorneys for Plaintiff
HUDDLESTON DELUXE, INC.

**16**

**COMPLAINT FOR PATENT INFRINGEMENT**